IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JACK COLEMAN,<br><br>Defendant. | )<br>)<br>)  Criminal No.  3:17-cr-72<br>)<br>)<br>)  GOVERNMENT'S RESPONSE TO<br>)  DEFENDANT'S MOTION FOR<br>)  COMPASSIONATE RELEASE<br>)<br>)<br>) |

The Court should deny defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) because he has no medical condition that constitutes "extraordinary and compelling reasons" justifying early release, a reduction of his sentence is inconsistent with the 18 U.S.C. § 3553(a) sentencing factors, and he remains a danger to the community.

1. Since 2011, there has been three reports of sexual abuse against "Grandpa Jack" Coleman (herein after Defendant) from various step-grandchildren and their friends who visited the Defendant's residence. Two of the three investigations done by the Department of Human Services were founded.

2. A fourth report was made by two minor victims in February 2016. A search warrant was conducted at Defendant's residence and forensic interviews were conducted of several grandchildren. The examination of the electronic devices seized from the house revealed multiple images of child pornography captures from a hidden video camera Defendant places in the bathroom. The images were then saved and deleted from Defendant's computer. There were six identified minor victims on the

1

hidden camera ranging in age from 11 to 17 years old. Additionally, a series of nude photos were found of a minor victim, wherein Defendant has her pose as he took pictures of her in lingerie and in the nude in the basement of his residence. There were approximately 60 child pornography pictures found in total on Defendant's laptop, dated June 25, 2017, through October 27, 2015. Further, Defendant sexually assaulted four minor victims. This included acts of sexually touching up to and including oral sex and intercourse.

  3. On August 17, 2017, a two-count Indictment was filed charging Jack Lee Coleman with two counts of Production of Child Pornography. (Final Presentence Report, hereinafter "PSR." ECF 56 ¶ 1.) On February 2, 2018, the defendant pled guilty to Count One of the Indictment. (PSR ¶ 2.)

  4. At sentencing, the Court heard arguments of counsel and heard from several victims, or their families through live testimony or letters. On July 9, 2018, Defendant was sentenced to 360 months in prison.

  5. Defendant is now 67 years old and incarcerated at Pekin FCI. He has served roughly 12% of his sentence and is currently schedules for release on February 22, 2043. *Find an Inmate.*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited August 24, 2020).

  6. On August 6, 2020, defendant filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (DCD 67.) Defendant asserts that his medical conditions to include: asthma, high blood pressure, and chronic high cholesterol are

extraordinary and compelling reasons that justify early release from prison. Defendant also alleges that he is more vulnerable to COVID-19.

7. Prior, Defendant filed a request with the warden, which was denied on April 30, 2020. See Exhibit 1. As part of that decision, the warden likely used the information provided to him in a letter from the medical officer to the case manager dated April 29, 2020. See Exhibit 2. In that request to the warden, Defendant states correctly that he was convicted of production of child pornography, but does not state the number of charged or victims. (DCD 67, attachments.) Further, he indicated his charge involved "simply taking photos." *Id.* The PSR demonstrated that this is not the case. He did far more than take pictures of his numerous victims, he sexually assaulted them repeatedly. Further, Defendant authored a letter in which he claims to have "made a mistake" when referring to the crime he committed. See Exhibit 3. Defendant stated that "one mistake does not make a person" further minimizing the crime in which he was convicted. *Id.*

8. The burden is on the defendant to show that he is entitled to compassionate release under 18 U.S.C. § (c)(1)(A). *United States v. Korn,* No. 15-CR-81S, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020); *United States v. Dembry*, No. 3:06-cr-0587, Document 125, at 5 (S.D. Ia. Mar. 28, 2020) (Jarvey, C.J.); *cf. United States v. Jones,* 836 F.3d 896, 899 (8th Cir. 2019) (burden is on defendant to show a sentence reduction is warranted under 18 U.S.C. § 3582(c)(2)).

9. Under the statute, this court may reduce a term of imprisonment if defendant establishes that: (1) "extraordinary and compelling reasons" support a

3

reduction; (2) the reduction is consistent with the Sentencing Commission's applicable policy statements; (3) the factors set forth in 18 U.S.C. § 3553(a) support the reduction; and (4) the defendant is not a danger to any victim or the community as provided in 18 U.S.C. § 3142(g). 18 U.S.C. § 3582(c)(1)(A); USSG §1B1.13.

10. Title 28, United States Code, Section 994(t) requires the Sentencing Commission to promulgate policy statements describing what qualifies as "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."

11. Pursuant to section 994(t), the Sentencing Commission issued USSG §1B1.13 as its policy statement for compassionate release motions. Because any sentence reduction under 18 U.S.C. § 3582(c)(1)(A) must be consistent with the Sentencing Commission's policy statements, section 1B1.13 is binding on this Court. *See Dillon v. United States,* 560 U.S. 817, 827 (2010).

12. Application Note 1 of USSG §1B1.13 sets forth the "extraordinary and compelling reasons" that may justify compassionate release. Medical conditions can constitute "extraordinary and compelling reason" under USSG §1B1.13, but only if the defendant is suffering from terminal illness, or (1) the defendant is suffering from (a) a serious physical or medical condition, (b) a serious functional or cognitive impairment, or (c) deteriorating physical or mental health because of the aging process, and (2) the medical issue "substantially diminished the ability of the defendant to provide self-case within the environment of a correctional facility and from which he or she is not expected to recover." USSG §1B1.13, comment. (n.1).

13. "Extraordinary and compelling reasons" also include "a serious deterioration in . . .health because of the aging process," but only for those prisoners 65 or older who have served at least ten years or 75% of their sentence, *Id.*[1]

14. Compassionate release on the basis of a medical condition is "rare" and "extraordinary." *White v. United States,* 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019); *United States v. Willis*, 352 F. Supp. 3d. 1185, 1188 (D.N.M. 2019). Many federal inmates " have medical conditions that make confinement more difficult," and this alone is not a basis for relief. *United States v. Malone*, 2019 WL 3337906, at *2 (W.D.Va. July 25, 2019). Defendant has not demonstrated he falls within the category of defendants who present an "extraordinary and compelling" medical reason for compassionate release.

15. Defendant does not have a terminal illness. He has not submitted medical evidence suggesting he is suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deterioration in physical or mental health due to aging. Although defendant does have a history of asthma and high blood pressure that is not enough. He further does not indicate that he is enduring an "extraordinary and compelling" medical condition. *See, e.g., United States v. Clark*, Crim. Action No. 17-85-DD-RLB, 2020 WL 1557397, at *2 (M.D. La. Apr. 1, 2020) (denying release to a 67-year old prisoner, who was in the "high-risk" age group

---

[1] Application Note 1 also contains two other "extraordinary and compelling reasons"—certain family condition and other circumstances that the Director of the BOP has determined to be "extraordinary and compelling" (which are listed in BOP Program Statement 5050.50, which is available at https://www.bop.gov/policy/progstat/5050_50_EN.pdf). Neither of these "reasons" are applicable to defendant's case.

for COVID-19 and has a history of high blood pressure, high cholesterol, and sleep apnea); *United States v. Gamble*, No. 3:18-cr-0022, 2020 WL 1955338, at *4-*5 (D. Conn. Apr. 23, 2020) (denying release to inmate with diabetes, even though diabetics are at a higher risk of difficulties with COVID-19).

16. According to the CDC list, asthma and high blood pressure are on the list which suggest that those conditions "might" increase the risk of severe illness. CDC advised that "COVID-19 is a new disease. Currently there are limited data and information about the impact of underlying medical conditions and whether they increase the risk for severe illness from COVID-19." CDC advisory posted June 25, 2020. Defendant's medical records indicate that since at least August 17, 2018, he falls into the category of "Stable, Chronic Care."

17. Even assuming defendant is suffering from a serious medical condition, he still fails to satisfy the "extraordinary and compelling" standard because he has not shown that the condition "substantially diminishes" his ability to provide self-care in the corrections environment, or that he is not expected to recover from the condition. *See* 18 U.S.C. § 3582(c)(1)(A). Indeed, his alleged medical conditions have been addressed and managed during his time at Pekin FCI up to this time, and he has never requested compassionate release before. With no actual evidence of disability, the defendant's conclusory statements fail to meet the standard for compassionate release. *See, e.g., United States v. Mollica*, No. 2:14-CR-329, 2020 WL 1914956, at *3-*6 (N.D. Ala. Apr. 20, 2020) ("[T]he court cannot just take [the inmate's] word; it needs medical evidence to determine whether her conditions meets the [extraordinary and

compelling] requirement."); *United States v. Mangarella*, 3:06-cr-151, 2020 WL 1291835, at *3 (W.D.N.C. Mar. 16, 2020).

18. Ordinarily, the foregoing would end the analysis. But defendant claims that his medical conditions, when coupled with the COVID-19 pandemic, rise to the level of "extraordinary and compelling reasons."

19. The COVID-19 pandemic, however, does not change the conclusion that defendant's motion should be denied. "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, -- F.3d --, 2020 WL 1647922, at *2 (3d Cir. April 2, 2020).

20. Rather, for a defendant to obtain compassionate release based on a medical condition that, standing alone, would not rise to the level of "extraordinary and compelling reasons" he must show: (1) a medical condition (not a condition generally applicable to many prisoners, such as advanced age) that makes him particularly vulnerable in the event he contracts COVID-19, and (2) a "particularized risk" that defendant is more likely to contract COVID-19 at the facility in which he is housed than if released. *United States v. Moskop*, No. 11-CR-30077, 2020 WL 1862636, at *1-*2 (S.D. Ill. Apr. 14, 2020); *United States v. Gillis*, No. 14-cr-00712, 2020 WL 1846792, at *3 (C.D. Cal. Apr. 9, 2020); *see, e.g.*, *Korn*, 2020 WL 1808213, at *6-*7 (denying release even though defendant's "medical conditions place him at increased risk of contracting and succumbing to COVID-19," and the forty COVID-19 cases at

defendant's facility, because there was no evidence BOP was unable to "guard against or treat" the virus).

21. Because defendant cannot satisfy either prerequisite, the Court should deny his motion.

22. Defendant does not allege/has not shown that he is particularly vulnerable to COVID-19 under the CDC guidelines. His general concerns about COVID-19 do not justify release. *See Korn*, 2020 WL 1808213, at *6; *Gillis*, 2020 WL 1846792, at *3; *see Carter v. Santa Fe Adult Detention Ctr.*, No. CV 20-00271, 2020 WL 1550888, at *2 (D.N.M. Apr. 1, 2020).

23. Even assuming Defendant may be more susceptible to COVID-19 because of asthma and high blood pressure, he has not shown that BOP "cannot adequately manage the pandemic" within Pekin FCI or that the facility is unable to treat him. *Gamble*, 2020 WL 1955338, at *4-*5. Courts should deny motions for release, even for inmates "at extremely high risk to contract COVID-19," where the defendant has failed to show that the facility's response to the virus was inadequate, or failed to show "any particularized risk" to himself. *See United States v. Ciccone*, 2020 WL 1861653, at *3 (N.D. Ohio Apr. 14, 2020); *Moskop*, 2020 WL 1862636, at *1-*2; *see also Korn*, 2020 WL 1808213, at *6 (denying release, despite pandemic, where defendant's serious heart condition was "essentially the same as when he arrived" at the prison).

24. There appears to be some transmission of COVID-19 at Pekin FCI. There are two inmates and one staff member that have tested positive for COVID-19.

This is a very low percentage of the total number of staff and inmates housed at that facility. But, as explained below, BOP has taken appropriate steps to limit transmission, defendant is not a higher risk than any other inmate, and defendant has not shown "any particularized risk" to himself. *Moskop*, 2020 WL 1862636, at *1-*2 (denying motion).

25. BOP has been devoting all available resources to protecting inmates from COVID-19 and has been planning for a potential pandemic since January 2020. BOP has since taken measures to mitigate the risk of transmission, including by limiting social visits to and tours of facilities, suspending inmate movements, screening inmates and staff, and prioritizing home confinement of inmates. *Federal Bureau of Prisons COVID-19 Action Plan*, Fed. Bureau of Prisons (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/ 20200313_covid19.jsp; Memorandum from Attorney General William Barr to Director of BOP (Mar. 26, 2020), *available at* https://www.justice.gov/file/1262731/download.

26. Since March, BOP has placed 7,435 inmates on home confinement, and on April 3, the Attorney General exercised emergency authority under the CARES Act to increase home confinement further.[2] *Update on COVID-19 and Home Confinement*,

---

[2] In deciding whether to move a prisoner to home confinement, BOP considers numerous factors, including (1) the age of the prisoner; (2) the vulnerability of the prisoner to COVID-19; (3) the security level of the facility in which the prisoner is located; (4) the prisoner's score under Prisoner Assessment Tool Targeting Estimated Risk and Needs; (5) the prisoner's crime of conviction and danger to the community; and (6) the prisoner's reentry and travel plan. BOP's goal is to perform an individualized assessment of each prisoner to determine whether he or she should be transferred to home confinement. *See supra* Memorandum from Attorney General

Fed. Bureau of Prisons (August 12, 2020 11:45 AM), https://www.bop.gov/coronavirus/; Memorandum from Attorney General William Barr to Director of BOP (Apr. 3, 2020), *available at* https://www.justice.gov/file/1266661/download.

27. Thanks to BOP's efforts, only 1,407 inmates in BOP custody have been diagnosed with COVID-19 as of today. *See COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited August 21, 2020). And just 616 BOP staff members have tested positive for the virus. *Id.* This is in sharp contrast to the hundreds of thousands of cases of COVID-19 in the United States outside of the BOP system.

28. Moreover, "the mere *possibility* of contracting a communicable disease, in the absence of any [BOP] failures, does not rise to the level of an extraordinary and compelling reason." *Korn*, 2020 WL 1808213, at *7 (denying motion even though facility had forty positive COVID-19 cases).

29. Although the COVID-19 pandemic is certainly a crisis, defendant does not offer extraordinary and compelling reasons why this circumstance justifies *his* early release. He also has not shown that he is particularly vulnerable to COVID-19, or that he is more likely to contract the virus at Pekin FCI than if released. Defendant's motion should be denied on these grounds alone.

---

William Barr to Director of BOP (Mar. 26, 2020).

In addition, BOP's pre-existing authority to move prisoners to home confinement continues to apply. *See* 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). And BOP is also using its furlough authority under 18 U.S.C. § 3622, although its focus is on home confinement.

30. The 18 U.S.C. § 3553(a) factors also weigh against granting compassionate release.

31. At the time of sentencing, the Court considered Defendant's age and lack of criminal history. Further, the Court was provided with letters of support at that time and considered those. Despite arguments of mitigation, the Court properly found that this is an aggravated case and one that warrants a sentence at the statutory maximum.

32. In addition, defendant remains a threat to the safety of the community and to all eight victims of his crimes. This case is more than just the Defendant putting a hidden video camera in his bathroom and recording six separate victims disrobing. This Defendant sexually abused minor females for several years and the victims have been trying to get justice since the first report of sexual misconduct in July 2011. The details brought to the authorities' attention in that initial report shows the Defendant's modus operandi. The minors discussed the inappropriate foundling that occurred at the Defendant's residence and they provided details regarding the hot tub, sleepovers, massages, and spiked drinks/ice cream. In 2011, the Department of Human Services (DHS) told the Defendant he needed to stop engaging in activities that put him in a position of having independent access to minor children. However, the Defendant did not heed DHS's suggestion, and continued to involve himself in the sexual abuse of minors. His behavior escalated from sexually touching to sexual intercourse, and the number of victims increased. Finally, in 2016, the victims had the courage to report this continued abuse to the authorities.

33.  The Defendant had a well thought-out plan when deciding to place a camera in the bathroom. The Defendant used his hot tub to get the minors to dress in swimsuits and get in close proximity to them. He sexually assaulted numerous minor females while in the hot tub, and then directed them to take a shower, knowing the camera would catch them fully nude. The victims of the production of child pornography include four minors that are his grandchildren by marriage and two other minor victims, which were friends of his grandchildren.

34.  The defendant was a "hands-on" offender. He sexually assaulted four minor females. The Defendant started out touching their thigh, moving then to fondling their vaginas, then to sexual intercourse and oral sexual contact. The victims reported similar behavior of the Defendant. The Defendant provided them with drinks or ice cream that tasted abnormal, and the victims felt drowsy, suggesting that the Defendant laced their drink/food with a drug. The Defendant took advantage of the victims after they were in a groggy state. Several victims stated that the Defendant offered them money to dress and pose provocatively for photographs. The pictures were saved to the Defendant's computer. One of the victims was depicted posing in 18 different outfits/lingerie. Even after several of the victims stopped having contact with the Defendant, he attempted to engage them in conversation via Facebook.

35.  This case shows that the Defendant was calculated in his goal of producing child pornography and sexually abusing minors. This pattern took place over nearly six years and negatively affected the eight victims. The trauma caused by the Defendant will affect the victims for the rest of their lives.

36. From the letter the Defendant wrote to the warden, it is clear that Defendant is minimizing his crime. The Defendant does not understand the effects of his crime on the victim and their families. These victims are traumatized from the acts perpetrated by this Defendant. They would further be traumatized if the Defendant was released from prison after only serving a short time of his sentence. Further, the community as a whole would be at risk of this Defendant.

Because defendant has failed to satisfy the requirements of 18 U.S.C. § 3582(c)(1)(A), the Court should deny defendant's motion for compassionate release.

Respectfully submitted,

Marc Krickbaum
United States Attorney

By: */s/ Melisa Zaehringer*
Assistant United States Attorney
U.S. Courthouse
131 East 4th Street, Suite 310
Davenport, Iowa 52801
Tel: (563) 449-5432
Fax: (563) 449-5433
Email: melisa.zaehringer@usdoj.gov

CERTIFICATE OF SERVICE
I hereby certify that on August 21, 2020, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by:
  X   U.S. Mail _____ Fax _____ Hand Delivery

  X   ECF/Electronic filing   _____ Other means

UNITED STATES ATTORNEY
By: /s/ Melisa Zaehringer
     Assistant United States Attorney